IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

476 K, LLC,                                       :
c/o Tom McDowell                                  :
12311 Middlebrook Road                            :
Germantown, Maryland  20874                       :
                                                  :
              Plaintiff,                          :
                                                  :
       v.                                         :      Civil Action No.:
                                                  :
SENECA SPECIALTY INSURANCE                        :
COMPANY                                           :      **JURY TRIAL DEMANDED**
160 Water Street, 16th Floor                      :
New York, New York  10038                         :
                                                  :
              Defendant.                          :
                                                  :

## COMPLAINT

Plaintiff, 476 K, LLC ("476 K"), by and through its undersigned counsel, as and for its First Amended Complaint against Seneca Specialty Insurance Company ("Seneca"), states as follows:

## THE PARTIES

1.     Plaintiff 476 K is incorporated pursuant to the laws of the District of Columbia, with its principal place of business located at 476 K Street, NW, Washington, DC 20001.  The members of 476 K are Andre de Moya, a citizen of the State of Maryland; Tony Cavasilios, a citizen of the State of Maryland; Brooke Patterson, a citizen of the Commonwealth of Virginia; and 5K Properties, LLC, which is incorporated pursuant to the laws of the District of Columbia with Carlos Horcasitas, a citizen of the State of Maryland, as its sole member.

2.      Upon information and belief, Defendant Seneca is a corporation organized under the laws of the State of Arizona, with its principal place of business located at 160 Water Street, 16th Floor, New York, New York 10038.  Seneca is authorized to conduct and does conduct business in the State of Maryland.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) as the insurance policy in dispute was issued in this judicial district, and because Seneca is subject to this Court's personal jurisdiction.

## BACKGROUND

5.      This is an action for breach of an insurance contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment, seeking damages and an adjudication of the rights, duties and obligations of 476 K and Seneca involving a commercial property insurance policy issued by Seneca, for the policy period from February 25, 2014 through February 25, 2015, Policy No. SSP18002084 (the "Policy"), under which 476 K is the named insured. *See* Policy, attached as Exhibit 1.

6.      The Policy insures 476 K for direct physical loss of or damage to business personal property and tenant improvements and betterments arising from a covered cause of loss, as well as all loss of business income and extra expense sustained therefrom.

7.      476 K owns and operates a club at 476 K Street, NW, Washington, DC 20001 (the "Property"), where it leases space from Ninth Street Restaurants, Inc.

8.     Although the land and buildings at the Property are owned by Ninth Street Restaurants, 476 K has made substantial improvements to its lease space, and insured these improvements through the Policy.

9.     The Property is made up of four buildings that have all been connected into one address. In 1983, two buildings fronting 5th Street and one building on the corner of 5th Street and K Street were connected. Subsequently, a building on K Street immediately to the east of these buildings was also connected to the Property and made a part of 476 K Street. For ease of reference, this building is specifically referred to in this Complaint as the "East Building" of the Property

10.    On May 2, 2014, the East Building of the Property abruptly collapsed. This collapse resulted not only in the complete destruction of the East Building, but the remaining portions of the Property were so severely damaged that none of the Property was safe for occupancy.

11.    Upon investigation, it was determined that the cause of the collapse was defective methods of construction in performing underpinning work at the Property. *See* 476 K Street NW Collapse Report (July 8, 2014), attached as Exhibit 2.

12.    At the time of the collapse, the Property was undergoing renovations that included converting the subfloor crawl space into a basement. The construction methods utilized by the contractor to underpin the walls to construct the basement were defective. *Id*. Specifically, the contractor excavated the entire basement to subgrade within approximately six to eighteen inches of the walls to be underpinned, and then cut slots every eight to twelve feet to the far side of the brick back footings to install underpinning. This left the buildings at the Property unstable and caused the collapse. *Id*.

13.    The east wall of the Property (*i.e.*, the eastern most wall of the East Building), which was being underpinned at the time, failed and dropped the middle third of the second and third floors, causing other portions of the floors and roofs to collapse.

14.    The collapse of the Property has resulted in the complete cessation of all business activity and income for 476 K, and in the total loss of all tenant betterments and improvements.

15.    Despite insuring 476 K for these very losses (loss of business income, tenant improvements and betterments and business personal property), to date, Seneca has refused to provide any coverage for losses incurred by 476 K.

16.    It was not until August 15, 2014, more than 100 days after the loss, that Seneca provided a statement as to potential coverage in this matter, wherein Seneca simply reserved all rights under the Policy and stated that no coverage determination could be reached because its investigation is ongoing.

17.    Seneca's failure to promptly investigate, adjust, and pay for 476 K's covered losses — in violation of fair claims handling procedures required in both Maryland and the District of Columbia, in breach of the Policy and in breach of Seneca's implied covenant of good faith and fair dealing — has caused, and is continuing to cause, 476 K to suffer direct and consequential damages, all of which were reasonably foreseeable by Seneca when it issued the Policy and agreed to insure 476 K against the very losses it has sustained at the Property.

18.    All obligations under the Policy have been satisfied by 476 K, including the payment of premiums and provision of timely notice of claims, or they have been waived, released or are the subject of an estoppel.

## INSURANCE COVERAGE FOR THE DAMAGES

19.     The Policy insures the Property against all risks of direct physical loss unless expressly excluded by the Policy.

20.     The Policy does not exclude loss caused by collapse from defective construction methods.

21.     To the contrary, the Policy expressly covers such loss.  Section D.2. of the Causes of Loss – Special Form of the Policy, which is titled "Additional Coverage – Collapse," provides:

> We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:
>
> . . .
>
> c.     Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.
>
> . . . .

22.     Paragraph D.1. of that Section explains:

> For purposes of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

23.     Coverage under the Policy for losses resulting from collapse includes loss of or damage to tenant improvements and betterments and business personal property.  This includes coverage for emergency services to safeguard covered property from further damage and to remove debris that is on the insured premises.

24.     Coverage under the Policy for losses resulting from collapse also includes loss of Business Income sustained as a result of the damage.  The Policy provides: "We will pay for the

actual loss of Business Income you sustain due to the necessary suspension of your operations during the period of restoration." Business Income is defined as Net Income that would have been earned and continuing normal operating expenses incurred, including payroll. *See* Policy, Business Income (and Extra Expense) Coverage Form, ¶ A.1.

25.    The Business Income coverage includes Extended Business Income, which continues to provide coverage for loss of business income for up to sixty days after business operations are resumed. *Id.* at ¶ A.5.c.

26.    The Policy further provides Extra Expense coverage, covering necessary expenses incurred by 476 K during the rebuild effort that 476 K would not have incurred if there had been no direct physical loss or damage to the Property, as well as Civil Authority coverage, for loss caused by action of civil authority that prohibits access to the insured property. *Id.* at ¶ A.2. and A.5.a.

27.    Despite the above provisions and repeated requests for coverage from 476 K, Seneca has refused to provide coverage for the losses sustained.

### SENECA HAS DELAYED ITS INVESTIGATION AND IMPROPERLY REFUSED COVERAGE

28.    Seneca has failed to investigate coverage in good faith and has improperly refused coverage.

29.    476 K provided Seneca with timely notice of the collapse.

30.    Seneca retained Capstone IG to serve as a third-party adjuster to investigate the loss. A representative from Capstone IG appeared at the Property in the days following the collapse, but could not be granted access to the site due to access restrictions imposed by District of Columbia public authority.

31.     Upon meeting with Capstone IG, 476 K requested an advance of business income loss under the Policy.  Capstone IG confirmed this request via email on May 12, 2014, and requested specific financial information from 476 K to allow Seneca to analyze the request.

32.     The financial information requested by Seneca was provided on May 14, 2014. Updated information was provided on May 30, 2014.

33.     On May 20, 2014, Capstone IG was notified that although the public authority had not yet cleared the Property for public access, KCE Structural Engineers, P.C. ("KCE"), the engineering firm retained to perform the make-safe work, would provide limited access to any party who wanted to inspect the Property on May 22, 2014, and Capstone IG – on behalf of Seneca – was invited to attend.  No representative from Capstone IG or Seneca attended the May 22 inspection.

34.     An offer to inspect was again provided for May 29, 2014.  Again, no representative from Capstone IG or Seneca attended the May 29 inspection.

35.     During the week of June 9, 2014, more than 5 weeks after the collapse and after substantial make-safe efforts had already been completed, 476 K was informed that Seneca had retained an engineering expert to analyze the loss.

36.     476 K, through KCE, immediately offered to allow Seneca's expert to inspect the Property, and a visit was scheduled for Friday of that week, June 13, 2014.

37.     Ultimately, Seneca's expert declined the inspection, and to date, no expert from Seneca has ever visited the Property.

38.     On June 23, 2014, more than 7 weeks after the collapse, Capstone IG requested a site visit to document the damages to improvements and betterments.  A visit was scheduled and occurred on July 1, 2014.  During this site visit, 476 K's public adjuster requested that Capstone

IG recommend to Seneca that they engage a building consultant and salvor to inspect and assess the extent of building and business personal property damages, which is customary on these types of losses. Although Capstone IG agreed to make this recommendation, it was not until August 25, 2014, nearly two months later, that Seneca engaged any such experts.

39.     The visit of July 1, 2014 by Capstone IG is the only site visit attended by any representative of Seneca. This, despite repeated requests and offers from 476 K allowing Seneca access.

40.     Throughout this period, 476 K made repeated requests for an advance of business income under the Policy and provided Seneca with all requested financial information to support its requests. The information provided to Seneca demonstrated that 476 K was losing substantial business income as a result of the collapse.

41.     As of July 18, 2014, 11 weeks after the collapse, 476 K had not received any response from Seneca regarding its requests for coverage. Seneca had not issued a reservation of rights or any other correspondence providing its coverage position.

42.     This was in violation of the Code of Maryland Regulations, § 31.15.07.04(B), which requires that "[i]f an insurer has not completed its investigation of a first party claim within 45 days of notification, the insurer shall promptly notify the first-party claimant, in writing, of the actual reason that additional time is necessary to complete the investigation." It was further in violation of the claim handling procedures required in the District of Columbia, where insurers must implement reasonable standards for the prompt investigation of claims. D.C. Code § 31-2231.17(b)(3).

43.     Having incurred more than $700,000 to remove debris and make the Property safe in order to begin the rebuild effort, and having received no business income for more than two

and a half months since the date of the collapse, 476 K was in need of the insurance coverage it had purchased from Seneca and could no longer accept Seneca's silence.

44.     Accordingly, on July 18, 2014, 476 K proactively submitted formal proofs of loss for partial payment of business income loss and damages to betterments and improvements, which under the Policy would require Seneca to respond within 30 days.

45.     The proof of loss for partial payment of business income requested an advance of $400,000, an amount far below the Policy's limit of liability for this coverage and far below the amount of business income actually sustained and owing under the Policy.  The proof of loss for partial payment of betterments and improvements, which payments are necessary to safeguard the property from further damage, remove debris and assist in the rebuild effort, was for $1 million.  Again, this is an amount far below the Policy's limit of liability for this coverage and represents an amount far less than the cost to repair the betterments and improvements that were lost or damaged in the collapse.  The amounts requested in the proofs of loss for partial payment represent loss already incurred by 476 K and owing under the Policy.

46.     It was not until Friday, August 15, 2014, 28 days after the proofs of loss were submitted and more than 100 days since the date of the collapse, that Seneca provided a response.

47.     The response provided was Seneca's initial reservation of rights.  In its reservation of rights, Seneca listed a number of potential exclusions that it contended might apply to the loss, none of which were supported by any factual basis, and – despite having more than 100 days to investigate the loss – Seneca stated that it needed additional time to investigate before a coverage determination could be made.  Seneca has given no indication as to what additional information

must be reviewed or investigated.  Neither has it requested any additional information nor asked to visit the site, despite express invitations from 476 K to do so.

48.    Seneca has breached its obligations under the Policy including:  a) failing to pay amounts that it owes 476 K; and b) failing to conduct a prompt and adequate investigation, poorly handling the claim, and putting its own interests above those of 476 K, all in breach of its implied duty of good faith and fair dealing to 476 K.

## COUNT I
## DECLARATORY JUDGMENT

49.    476 K repeats and realleges each and every preceding allegation as if fully set forth herein.

50.    Upon information and belief, Seneca disputes one or more of the allegations herein, including, without limitation, the assertion of 476 K that the Policy covers the losses outlined above.

51.    By reason of the foregoing, an actual and justiciable controversy exists between 476 K and Seneca regarding their respective rights and obligations under the Policy, including, but not limited to Seneca's obligation to indemnify 476 K for physical damage to covered property, loss of business income and other losses and expenses incurred at the Property.

52.    An Order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

53.    476 K is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202, *inter alia*, that:

(i)    Seneca is obligated to indemnify 476 K for physical damage to business personal property, tenant betterments and improvements; business interruption losses; and extra expense, among other coverages, up to the limits of the Policy;

(ii)    The exclusions cited by Seneca in its reservation of rights do not bar coverage for 476 K for damages and losses incurred at the Property; and

(iii)    476 K is entitled to recover from Seneca all fees and costs incurred in pursuing this action, as well as interest, due to Seneca's breach of contract and breach of the implied duty of good faith and fair dealing.  Md. Code Ann., Crts. & Jud. Proceedings § 3-1701.

## COUNT II
## BREACH OF CONTRACT
## (Indemnity)

54.    476 K repeats and realleges each and every preceding allegation as if fully set forth herein.

55.    The Policy is a valid and binding agreement between 476 K and Seneca.

56.    476 K is the Named Insured under the Policy.

57.    Under the terms of the Policy, Seneca has an obligation to indemnify 476 K for loss or damage caused by collapse resulting from defective methods of construction.

58.    Seneca has breached the insurance contract (*i.e.*, Policy) by failing to pay damages covered by the Policy.

59.    All obligations under the Policies have been satisfied by 476 K, including the payment of premiums and provision of timely notice of claims, or they have been waived, released or are the subject of an estoppel.

60.    Seneca has refused to pay amounts owed under the Policies without basis.

61.    As a direct, proximate and foreseeable result of Seneca's refusal to fulfill its coverage obligations to 476 K, 476 K has incurred damages and will continue to incur substantial additional damages, fees, costs, and expenses.

62.    As a result of the aforementioned breaches, Seneca is liable to 476 K for money damages to the extent covered by the Policy, plus costs and interest.

## COUNT III
## BREACH OF CONTRACT
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

63.    476 K repeats and realleges each and every preceding allegation as if fully set forth herein.

64.    Implied in the Policy is the covenant of good faith and fair dealing.

65.    The implied covenant of good faith and fair dealing requires insurers to adequately investigate claims, to process and pay claims expeditiously, and to proceed generally in good faith, particularly where continued delay exposes the insured to additional damage.    The hallmark of good faith is an insurer's obligation to put its insured's interests ahead of its own.

66.    Seneca had a duty to immediately conduct an adequate investigation, act reasonably in evaluating 476 K's claim, and promptly pay 476 K's legitimate claims.

67.    Seneca has breached the Policy's implied covenant of good faith and fair dealing by failing to adequately and promptly investigate 476 K's claim, failing to settle promptly and fairly those damages that are covered, and failing to proceed generally in good faith.    Seneca delayed inspection of the Property, delayed responding to 476 K's repeated requests for coverage, and intentionally engaged in a half-hearted coverage investigation to delay payment and limit coverage and otherwise put its own interests ahead of 476 K's.

68.    Examples of Seneca's breach of the implied covenant of good faith and fair dealing include, but are not limited to:

    a.  Failing to engage an expert to analyze the cause of loss until 5 weeks after the collapse, which analysis is being performed without Seneca's expert ever visiting the site of the collapse;

b.   Failing to inspect the Property until 2 months after the collapse;

c.   Repeatedly and intentionally delaying in providing a response to 476 K's requests for coverage;

d.   Delaying in providing a response to 476 K's proofs of loss for 28 days, only to respond that it needed additional time to investigate, despite more than 100 days having passed since the date of the loss; and

e.   Failing to complete its investigation within 45 days of receiving notice of the claim, and failing to notify 476 K of the reason that additional time is necessary to complete the investigation, all in violation of Code of Maryland Regulations, § 31.15.07.04(B) and D.C. Code § 31.2231.17(b)(3).

69.   Seneca's inadequate investigation and claims handling procedures constitute a breach of the implied covenant of good faith and fair dealing.

70.   As a result of Seneca's conduct, including its intentional refusal to comply with its Policy and its duty of good faith and fair dealing, Seneca is liable to 476 K for money damages to the extent covered by the Policy, attorneys' fees, costs and interest.  Md. Code Ann., Crts. & Jud. Proceedings § 3-1701.

71.   These damages were foreseeable to Seneca at the time the Policy was purchased, prepared and delivered to 476 K and known when Seneca engaged in its intentionally wrongful conduct.

**WHEREFORE,** 476 K demands judgment against Seneca as follows:

a.   Entering declaratory relief, in accordance with Count I above, and as otherwise appropriate based upon 476 K's claims;

b.   Awarding monetary damages in an amount to be shown at the time of trial;

c.   For attorneys' fees and costs in an amount to be shown at the time of trial;

d.   For damages allowable pursuant to Md. Code Ann., Crts. & Jud. Proceedings § 3-1701;

e.   For pre-judgment and post-judgment interest; and

f.    For such other and further relief that this Court deems just and equitable.

## JURY DEMAND

476 K demands a trial by jury on all issues so triable.


Dated:  August 26, 2014

Respectfully submitted,

Melissa C. Lesmes (Md. Bar No. 22864)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, NW
Washington, D.C. 20037-1122
Phone:     (202) 663-8000
Facsimile: (202) 663-8007
melissa.lesmes@pillsburylaw.com

*Counsel for 476 K, LLC*

Of counsel:

David T. Dekker
David L. Beck
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, NW
Washington, D.C. 20037-1122
Phone:     (202) 663-8000
Facsimile: (202) 663-8007
david.dekker@pillsburylaw.com
david.beck@pillsburylaw.com